**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | | |
|---|---|---|
| **SOUTHERN INSURANCE** | : | |
| **COMPANY OF VIRGINIA,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No. 3:10-CV-84 (CAR)** |
| | : | |
| **MICHELLE KARRER,** | : | |
| **VIRGINIA RAYLENE SANDERS,** | : | |
| **and HAROLD SANDERS,** | : | |
| | : | |
| **Defendants.** | : | |

_____

## ORDER ON DEFENDANT'S MOTION TO DISMISS

This matter comes before the Court on Defendant Michelle Karrer's Motion to Dismiss [Doc. 4]. Defendant contends that the Court lacks subject matter jurisdiction over this action because the amount in controversy does not exceed $75,000. Having considered the matter, the Court finds that Plaintiff has proven by a preponderance of the evidence that the amount in controversy in this case exceeds $75,000. As a result, Defendant's Motion to Dismiss [Doc. 4] is **DENIED.**

### I. BACKGROUND

This declaratory judgment action concerns an insurance policy issued by Plaintiff Southern Insurance Company of Virginia ("SICV") to Defendant Harold Sanders, and the application of that policy to an incident involving Defendant Karrer and Defendant Virginia Raylene Sanders. SICV issued a Personal Auto Policy ("the Policy") to Harold Sanders. Virginia Sanders is a covered driver under the Policy. The Policy provides split liability limits of $50,000 per each person and $100,000 per each accident for bodily injury. The Policy also

contains two relevant exclusions: 1) the policy does not provide coverage for any insured who intentionally causes bodily injury ("Intentional Acts Exclusion"), and 2) the policy does not provide coverage unless a person seeking coverage cooperates with the insurer in the investigation, settlement, or defense of any claim ("Failure to Cooperate Exclusion").

On September 30, 2008, Karrer and Virginia Sanders were driving separate vehicles on U.S. Highway 29/Georgia Highway 8. Karrer and Virginia Sanders were involved in an incident. The ultimate result of the incident was Sanders's vehicle colliding with Karrer's vehicle, which was already in a ditch on the side of the road.

On September 30, 2010, Karrer filed a personal injury suit against Virginia Sanders and her father Harold Sanders in the Superior Court of Hart County, Georgia. According to the complaint in that case, Karrer and Virginia Sanders were involved in two wrecks that evening. The complaint alleged that after passing Karrer going in the opposite direction, Virginia Sanders turned her vehicle around and sped up to pull alongside Karrer. In doing so, Sanders was traveling in the oncoming lane of traffic. Sanders then swerved in Karrer's lane, running Karrer off the road. Karrer designated this sequence of events as Wreck No. 1. The complaint then alleges that after seeing that Karrer had run off the road, Sanders stopped, turned around, and drove back to Karrer's vehicle. As Sanders approached Karrer's vehicle, she lost control of her vehicle and crashed into the driver's side of Karrer's already wrecked vehicle. Karrer designated this as Wreck No. 2. As a result of the incident, Virginia Sanders pled guilty to: 1) driving on the wrong side of the road, in violation of O.C.G.A. § 40-6-40; 2) aggressive driving, in violation of O.C.G.A. § 40-6-397; 3) driving under the influence, in violation of O.C.G.A. § 40-6-391; and 4) aggravated assault, in violation of O.C.G.A. § 16-5-21.

Karrer's complaint sought various forms of monetary relief: compensatory damages for

past and future pain and suffering; compensatory damages for past and future medical expenses; punitive damages pursuant to O.C.G.A. § 51-12-5.1; and reasonable litigation expenses, including attorney's fees, pursuant to O.C.G.A. § 13-6-11.  In the complaint, Karrer alleged that she had incurred $3,317.00 in reasonable medical charges and expenses.  Beyond that, the complaint did not specify any particular dollar amount of damages sought.  Instead, Karrer requested: "damages . . . in an amount sufficient to fully and completely compensate her for her all general and specific damages compensable under Georgia law"; "punitive damages . . . in an amount sufficient to properly penalize, punish and/or deter" both Virginia and Harold Sanders; "an award for her reasonable expenses of litigation, including her reasonable attorney's fees"; and the costs of the action.

On October 20, 2010, SICV filed this declaratory judgment action seeking a ruling that it is not obligated to provide liability coverage to Virginia or Harold Sanders for the accident because Virginia Sanders intentionally drove into Karrer's vehicle and because both Virginia and Harold Sanders failed to cooperate with SICV's investigation of Karrer's claim.  In its complaint, SICV alleged, based on information and belief, that the amount in controversy in this case exceeds $75,000.00, exclusive of interests and costs.

On January 10, 2011, Karrer filed her motion to dismiss, arguing that the Court lacks subject matter jurisdiction over this action because it does not satisfy the amount in controversy requirement.

## II. DISCUSSION

Federal courts are courts of limited jurisdiction.  In 28 U.S.C. § 1332, Congress vested district courts with original jurisdiction over civil actions between citizens of different States where the amount in controversy exceeds $75,000, exclusive of interests and costs.  28 U.S.C. §

1332(a). Section 1332 has two requirements: complete diversity, see Sweet Pea Marine, Ltd. v. APJ Marine, Inc., 411 F.3d 1242, 1247 (11th Cir. 2005) (noting that for complete diversity each defendant must be a citizen of a different State than each plaintiff), and the amount in controversy. The parties do not dispute whether the complete diversity requirement is met. SICV is a citizen of Virginia. All defendants are citizens of Georgia. The question here is whether the amount in controversy in this case exceeds $75,000.

In a declaratory judgment case, "the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." Cohen v. Office Depot, Inc., 204 F.3d 1069, 1077 (11th Cir. 2000) (citation omitted). The object of this litigation is SICV's duty to defend and indemnify Virginia and Harold Sanders in the underlying tort suit; thus, the amount in controversy in this suit is the exposure SICV faces in performing that duty. Given that Karrer did not specify the particular amount of damages sought, SICV's exposure in the underlying suit is indeterminate. In addition to the amounts recoverable in the underlying lawsuit, the Court must also consider SICV's costs in defending its insured in the underlying suit in calculating the amount in controversy in this case. Owners Ins. Co. v. James, 295 F. Supp. 2d 1354, 1359 (N.D. Ga. 2003) (citing Stonewall Ins. Co. v. Lopez, 544 F.2d 198, 199 (5th Cir. 1976)). SICV, as the party seeking to invoke federal jurisdiction, "bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." Federated Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 807 (11th Cir. 2003).

In her state court complaint, Karrer alleged that she and Virginia Sanders were involved in two different wrecks [Doc. 1-1 ¶¶ 11, 16]. Under that theory of the case, SICV could be liable for up to the $50,000 per person liability limit for each accident. With two accidents, SICV would face a $100,000 liability limit based on the policy. The matter, however, is not that

simple. In a declaratory judgment action concerning the application of an insurance policy to a

particular occurrence, courts look beyond the policy limits and instead measure the amount in

controversy by the actual value of the underling claim – not the face value of the policy. See

Auto-Owners Ins. Co. v. Scott, No. 5:09-CV-166, 2009 WL 3011244 (M.D. Ga. Sept. 16, 2009)

(citing Hartford Ins. Group v. Lou-Con, Inc., 293 F.3d 908, 911 (5th Cir. 2002)).

The question then is how to determine the value of the underlying claim when Karrer did

not seek a specified dollar amount in her suit against Virginia and Harold Sanders. A recent

Eleventh Circuit case concerning removal jurisdiction is instructive on the matter.[1] In Roe v.

Michelin North America, Inc., 613 F.3d 1058, 1061 (11th Cir. 2010), the Eleventh Circuit noted

that in cases where a plaintiff makes an unspecified demand for damages in state court, it may

nonetheless be facially apparent from the pleading that the amount in controversy exceeds the

jurisdictional minimum. In other cases, however, the party seeking to invoke federal jurisdiction

may need to provide additional evidence supporting federal jurisdiction. See id. In determining

whether it is facially apparent that a case is properly subject to federal jurisdiction, district courts

are free to make "'reasonable deductions, reasonable inferences, or other reasonable

extrapolations' from the pleadings." Id. at 1061-62 (quoting Pretka v. Kolter City Plaza II, Inc.,

608 F.3d 744, 754 (11th Cir. 2010)). "[C]ourts may use their judicial experience and common

sense in determining whether the case stated in a complaint meets federal jurisdictional

requirements." Id. at 1062.

After applying the Court's own judicial experience and common sense to the complaint

in the underlying tort suit and considering further evidence provided by SICV, the Court finds

---

[1] The Eleventh Circuit has previously noted that aspects of the removal context and the declaratory judgment context are analogous in determining jurisdictional questions. See Federated Mut., 329 F.3d at 807 n.1.

that SICV has established by a preponderance of the evidence that the amount in controversy in the case exceeds $75,000. Karrer's complaint in the underlying tort suit requests compensatory damages for all general and specific damages compensable under Georgia law; punitive damages pursuant to O.C.G.A. § 51- 12-5.1; and reasonable litigation expenses, including attorney's fees, pursuant to O.C.G.A. § 13-6-11. And as noted above, the Court must also consider SICV's costs in defending the underlying lawsuit.

Although Karrer did not request a specific dollar amount of damages in her complaint, her counsel sent a demand letter to SICV concerning the claims. In a removal case, the Eleventh Circuit noted that courts have considered demand letters in determining questions concerning the amount in controversy. See Lowery v. Ala. Power Co., 483 F.3d 1184, 1212 n.62 (11th Cir. 2007) (citing Williams v. Safeco Ins. Co., 74 F. Supp. 2d 925, 929 (W.D. Mo. 1999)).

In the demand letter, counsel discussed Karrer's special and general damages. Counsel noted that Karrer incurred $3,317.00 in medical expenses, but that she had not been able to pursue all the medical treatment she felt she needed because she lacked health insurance. [Doc. 6-1 at 3]. Turning to general damages, counsel noted that Karrer had visited the emergency room twice suffering from neck pain and decreased range of motion, and that Karrer had experienced dizziness and numbness on the right side of her face [Id. at 3-4]. Counsel also stated that two years after the accident Karrer continued to suffer chronic pain and discomfort [Id. at 4]. The upshot of all of this was Karrer's "claims for past and future pain and suffering, alone, justify payment" of $50,000 [Id.].

The Court will credit Karrer's assessment of her compensatory damages in deciding the amount in controversy in this case. The request might seem somewhat inflated given that the only apparent diagnosed injury as a result of the incident was an acute cervical strain. On the

other hand, the demand letter states that the incident aggravated pre-existing neck conditions. And the letter indicates that Karrer continued to suffer chronic pain two years after the accident and that she believed the pain might be permanent. In any event, had Karrer in good faith requested $50,000 in pain and suffering damages in her state court complaint, the Court would certainly credit that in deciding the amount in controversy in this case. The Court will not ignore Karrer's evaluation of the value of the claim expressed in a demand letter. Accordingly $53,317 – $50,000 for pain and suffering and $3,317 in past medical expenses – will be counted toward the amount in controversy in this case.

An award for punitive damages is properly counted as part of the amount in controversy in this case as well. Georgia law provides for an award of punitive damages in tort actions when it is "proven by clear and convincing evidence that the defendant's action showed willful misconduct . . . or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b). In addition, if the "defendant acted or failed to act while under the influence of alcohol [or] drugs other than lawfully prescribed drugs administered in accordance with prescription . . . to the degree that his or her judgment is substantially impaired," then Georgia's $250,000 cap on punitive damages does not apply. Id. § 51-12-5.1(f). Punitive damages are clearly in play in this case. SICV's complaint alleges that Virginia Sanders pled guilty to driving under the influence in violation of O.C.G.A. § 40-6-391.

The demand letter dealt only briefly with punitive damages. Counsel claimed that Georgia's $250,000 cap on punitive damages was not applicable to this case because Virginia Sanders acted under the influence of alcohol or drugs to the degree that her judgment was substantially impaired.

SICV provided other evidence on the likely amount of a punitive damages award in this

case. Specifically, it provided an exhibit summarizing punitive damages awards in thirteen Georgia state court cases involving DUI and soft tissue injuries [Doc. 6-2]. The exhibit contains a factual summary of the cases and a breakdown on the damage award in each. The exhibit indicates that, on average, Georgia juries have awarded roughly $70,823 in cases where the claimant suffers soft tissue injuries and the at-fault driver was under the influence of drugs or alcohol.

SICV's exhibit is instructive, but also overstates its case. In several of the cases presented by SICV, the at-fault driver had multiple prior DUI arrests or convictions. Punitive damages awards in those cases were outliers, driving up the average. SICV does not allege that Virginia Sanders has any history of DUI; thus, the Court finds those cases inapplicable. Removing those outliers, the evidence submitted by SICV indicates an average punitive damages award of $32,222 in cases involving soft issue injuries where the at-fault driver was under the influence of alcohol or other drugs.

The $32,222 figure comports with the Court's experience and common sense regarding personal injury cases. The Court finds that more likely than not at least $32,222 in punitive damages are implicated in the underlying suit. That amount will be counted toward the amount in controversy in this case.

Based on the foregoing, the Court finds that SICV has proven by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement. Because SICV's duty to indemnify its insured for that amount in the underlying suit is sufficient to meet the amount in controversy requirement, the Court need not consider Karrer's requests for attorney's fees or SICV's litigation costs in the underlying suit.[2]

---

[2] The Court notes that SICV's costs in defending the underlying suit are properly counted because its duty to defend its insured in the underlying action is an object of this

Karrer never challenges the foregoing analysis, either in terms of what damages or costs were properly countable or the amounts related to them. Karrer's argument stands on a single point. After SICV filed this declaratory judgment action, Karrer filed an amended pleading in the underlying action that eliminated all claims related to what she had previously termed Wreck No. 2. She contends that because the underlying action is now based on only one wreck, SICV can only be liable for the $50,000 per person policy limit for that one accident; thus, the amount in controversy in this case is less than the jurisdictional limit.

Karrer's argument is unavailing; her decision to amend her complaint in state court does not affect this Court's jurisdiction. "It is well established that the requirements for diversity jurisdiction must be satisfied only at the time a suit is filed." Grinnell Mut. Reinsurance Co. v. Shierk, 121 F.3d 1114, 1116 (7th Cir. 1997). Or, turning again to the removal context in the Eleventh Circuit, "the district court must determine whether it ha[s] subject matter jurisdiction at the time of removal." Poore v. American-Amicable Life Ins. Co. of Texas, 218 F.3d 1287, 1290-91 (11th Cir. 2000), overruled on other grounds by Alvarez v. Uniroyal Tire Co., 508 F.3d 639 (11th Cir. 2007). Thus, "events occurring after removal which may reduce the damages recoverable below the amount in controversy requirement do no oust the district court's jurisdiction." Id. at 1291. Applying that reasoning to this case, the critical time for evaluating SICV's interest in the underlying litigation is the time it filed this declaratory judgment action. At that time, Karrer was pursuing a theory of the case that raised the policy limit to $100,000 based on two separate accidents. Karrer's choice rendered this declaratory judgment action a

---

litigation. SICV, however, has produced no evidence on the question. Because SICV has already proven the requisite amount in controversy by a preponderance of the evidence, the Court need not decide whether it is appropriate to use its judicial experience and common sense to determine the amount SICV's costs in defending the underlying suit would contribute to the amount in controversy.

proper subject for diversity jurisdiction, but that was her choice. She cannot now, with the

benefit of hindsight, oust this Court's jurisdiction by manipulating the underlying claim.

### III. CONCLUSION

As set forth above, the Court finds that SICV has established by a preponderance of the

evidence that the amount in controversy in this case exceeds $75,000. Accordingly, Defendant's

Motion to Dismiss [Doc. 4] is **DENIED**.


SO ORDERED this 22nd day of March, 2011.



S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT



bcw